STATE OF NORTH CAROLINA v. BRADLEY STEVEN COLLINS

No. COA11-207

(Filed 4 October 2011)

**1. Evidence—videotape—foundation—authentication—chain of custody**

The trial court did not err in a possession of marijuana and drug paraphernalia case by admitting a videotape without volume of a controlled buy as substantive evidence. The camera and taping system were properly maintained and were properly operating when the tape was made, the videotape accurately presented the events depicted, and there was an unbroken chain of custody.

**2. Identification of Defendants—lay opinion testimony of officer—person depicted in videotape**

The trial court did not commit plain error in a possession of marijuana and drug paraphernalia case by admitting the lay opinion testimony of an officer that defendant was the person depicted in the videotape. The officer had a sufficient level of familiarity with defendant's appearance to aid the jury in its determination and the testimony was not prejudicial to defendant.

Appeal by defendant from judgment entered 27 May 2010 by Judge Allen Cobb in Craven County Superior Court. Heard in the Court of Appeals 31 August 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Roberta A. Ouellette, for the State.*

*Lynn Norton-Ramirez for defendant appellant.*

McCULLOUGH, Judge.

Bradley Steven Collins ("defendant") appeals from judgment based upon his convictions for possession of marijuana and drug paraphernalia. Based on the following reasons, we find no error.

I. Background

In April 2008, a joint task force of the Havelock Police Department and the Craven County Sheriff's office targeted defendant for a controlled buy situation. A controlled buy is a method whereby the police use a confidential informant to purchase drugs

from a targeted individual. Officer Mike Stewart worked as a criminal investigator on the case and testified at trial. Officer Stewart had experience in drug cases and had worked on over 150 controlled buy situations. Clint Snyder served as the confidential informant and acted on behalf of the police in the videotaped marijuana buy.

The controlled drug buy occurred on 8 April 2008, and immediately prior to the buy, Officer Stewart checked Mr. Snyder's person and vehicle for any possible contraband. Another officer, Chris Drake, attached a hidden video camera to Mr. Snyder. Then the officers gave Mr. Snyder $250.00 to $275.00 in pre-recorded "buy money" and instructed him to purchase one quarter pound of marijuana from defendant. Officer Drake rode with Mr. Snyder to the buy location on Miller Boulevard. Mr. Snyder entered the house and after a few minutes returned with a quarter pound of marijuana. Following the controlled buy, Officers Drake and Stewart conducted a debriefing with Mr. Snyder. The Officers removed the video camera from Mr. Snyder and checked his person for any extraneous money or contraband. Also, not long after the buy, Officers Stewart and Drake viewed the recording.

At trial, defense counsel objected to the admission of the videotape on verbal and non-verbal hearsay grounds and as a violation of defendant's Sixth Amendment rights under the Confrontation Clause, as Mr. Snyder could not be found and no testifying witness had been in the room where the alleged buy took place. The prosecutor suggested that, if the trial court determined that the tape was testimonial and/or hearsay, then it could be played without sound. The trial court ruled that if the tape could be "authenticated and the foundation is laid" it would be allowed without volume. Upon the trial court's decision to allow the tape without volume, defendant withdrew his objection because he anticipated using the audio for an argument in his defense. To authenticate the tape and lay the foundation, Officer Stewart testified he checked the camera prior to Officer Drake's placing it on Mr. Snyder. Officer Stewart had been trained in the operation of the camera and had previously used it. He made sure to check that there were no other recordings on the tape and that the batteries were charged. He also noticed that a light was blinking indicating that the camera was in working condition. Officer Stewart also testified that the tape played for the jury at trial was the same one he viewed on 8 April 2008, without any changes, deletions, or alterations. He did note that a portion of the tape was "blacked out," most likely because of Mr. Snyder's seatbelt.

Also after the playing of the videotape, Officer Stewart testified regarding the images and depictions in the tape. He stated he recognized defendant in the video, as he had prior dealings with him. Defendant did not object to this testimony. Officer Stewart further testified he did not see Mr. Snyder personally hand the money to defendant or receive any controlled substance from defendant. However, he noted it appeared Mr. Snyder spoke directly with defendant regarding whom to pay. The video indicated that the marijuana was in a drawer and Mr. Snyder was to take it from there. The buy money was never recovered. Officer Drake also testified regarding his involvement in the investigation. He placed the camera on Mr. Snyder and accompanied Mr. Snyder in the car, but did not go inside the house on Miller Boulevard. According to Officer Drake, Mr. Snyder was inside for less than ten minutes. He also testified to the contents of the videotape and acknowledged that the blacked out part of the tape was likely caused by Mr. Snyder's seatbelt or clothing. Detective Rachel Hann of the Havelock Police Department testified that she had been looking for Mr. Snyder, but could not locate him.

At the end of the State's evidence, defense counsel made a motion to dismiss which was denied. Defendant did not present any evidence and renewed his motion to dismiss, which was again denied. The trial court instructed the jury on the offenses of possession of marijuana and drug paraphernalia, based on defendant's possession of plastic bags. The jury asked for a clarification of the charge of possession of marijuana and requested to view the videotape without interruption. After deliberation the jury found defendant guilty on the lesser offense of possession of marijuana and drug paraphernalia. Defendant received a consolidated sentence of six to eight months in prison for the Class I offenses of felony possession of marijuana and possession of drug paraphernalia with execution suspended for a 30-month supervised probationary period. Defendant appeals.

II. Analysis

A. Foundation and Authentication of Videotape

[1] Defendant raises two issues on appeal. Defendant first contends the trial court committed reversible error by admitting the videotape as substantive evidence when the State failed to lay proper foundation and authenticate the videotape. For reasons discussed herein, we disagree.

Generally, the rules governing the admissibility of photographs apply to videotapes. *State v. Strickland,* 276 N.C. 253, 258, 173 S.E.2d 129, 132 (1970). Videotapes may be admissible for illustrative and sub-

stantive purposes upon the laying of a proper foundation as noted in N.C. Gen. Stat. § 8-97 (2009), which states in pertinent part:

> Any party may introduce a photograph, video tape [sic], motion picture, X-ray or other photographic representation as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements. This section does not prohibit a party from introducing a photograph or other pictorial representation solely for the purpose of illustrating the testimony of a witness.

Furthermore, "when a videotape depicts conduct of a defendant in a criminal case, its potential impact requires the trial judge to inquire carefully into its authenticity, relevancy, and competency[.]" *State v. Mason*, 144 N.C. App. 20, 25, 550 S.E.2d 10, 14 (2001) (internal quotation marks and citations omitted). To lay the proper foundation for admission of a videotape, the offeror must meet the standard as articulated in *State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990), which requires:

> (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed, (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . . [;]" (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing," (substantive purposes); or (4)"testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed.' "

*Id.* (citations omitted).

Our Court applied the *Cannon* standard in a case with a similar foundation to the one *sub judice*. In *State v. Mewborn*, 131 N.C. App. 495, 499, 507 S.E.2d 906, 909 (1998), our Court held the testimony of three witnesses sufficiently "satisf[ied] the test enunciated in *Cannon*" for the admission of a videotape of an armed robbery. In *Mewborn*, the State offered testimony from a store employee and two officers regarding a surveillance tape from the robbed store. *Id.* The store employee testified to the working of the store VCR while the officers testified to having viewed the tape immediately after the robbery, the tape having remained in their custody, and the tape being in the same condition at trial as it was on the night of the robbery. *Id.*

Therefore, we must similarly review the foundation for admissibility of the videotape in our case by analyzing: "(1) whether the camera and taping system in question were properly maintained and were properly operating when the tape was made, (2) whether the videotape accurately presents the events depicted, and (3) whether there is an unbroken chain of custody." *Mason*, 144 N.C. App. at 26, 550 S.E.2d at 15.

First, in the case at hand, the State offered testimony from Officers Stewart and Drake regarding the maintenance and operation of the videotape. Officer Stewart testified, "there's a light on [the video camera] that indicates that [the video camera is] working properly." He further testified, "when you turn it on you know it's working," if the light is blinking. Officer Stewart went on to note that he had previously used the video camera and had been trained in operating it. In being thorough, he checked to see that there was no other recording on the videotape and that the batteries were charged. Officer Drake testified that he placed the camera on the informant. Taking this testimony together, Officers Stewart and Drake properly maintained and operated the camera.

Defendant takes issue with the second part of the test in arguing that by not having Mr. Snyder testify at trial, the State could not prove that the videotape fairly and accurately depicted the events. However, our Supreme Court has held that where photographs are not presented for illustrative purposes, it is not necessary to have a witness testify that the videotape accurately depicts the events. *State v. Gladden*, 315 N.C. 398, 414, 340 S.E.2d 673, 683 (1986); *see State v. Kistle*, 59 N.C. App. 724, 726-27, 297 S.E.2d 626, 627 (1982). Here, the State offered the videotape for substantive purposes as evidence that defendant committed a crime. Defendant objected to the admission of the videotape based on hearsay in that Mr. Snyder did not testify, but the State even offered to present the tape without volume. The trial court agreed that the tape should not be admitted with volume based on hearsay, but it could be admitted without volume for substantive purposes. Upon the trial court's decision, defendant retracted his objection based on his desire to use the audio portion in his defense if the tape was going to be admitted anyway. Based on the reasoning of our Court and the Supreme Court, the videotape was properly admitted for substantive purposes and the State did not need a witness to testify that the tape accurately depicted the events.

Finally, the State adequately established the chain of custody. Officers Stewart and Drake both testified they viewed the videotape on the night of the incident. Both officers also testified the tape played

STATE v. COLLINS

[216 N.C. App. 249 (2011)]

for the jury was the one they viewed on 8 April 2008, without any changes, additions, or deletions. Each officer even testified the blacked out portion of the tape was likely caused by the informant's clothing or seatbelt while riding in the car. Thus, the State properly laid the foundation for admission of the videotape.

Defendant also contends the trial court erred in failing to conduct a *voir dire* to determine whether any inadmissible or improper aspects of the videotape needed to be deleted or withheld. When a party objects to the admission of taped evidence, the trial court must conduct a *voir dire* and rule on all questions of admissibility. *State v. Gibson*, 333 N.C. 29, 41, 424 S.E.2d 95, 102 (1992) (holding trial court erred in failing to conduct a *voir dire*, but substance of the tape admissible despite the error), *rev'd on other grounds, State v. Lynch*, 334 N.C. 402, 432 S.E.2d 349 (1993); *see State v. Lynch*, 279 N.C. 1, 17, 181 S.E.2d 561, 571 (1971); *State v. Kamtsiklis*, 94 N.C. App. 250, 257, 380 S.E.2d 400, 403 (1989). Here, it appears the trial court did conduct a *voir dire*, out of the presence of the jury, by entertaining counsels' arguments regarding the admissibility of the videotape and considering admission of the tape without volume. While the trial court did not view the videotape, it conducted enough of a *voir dire* to meet the requirements of *Lynch* and *Kamtsiklis*. This issue was mooted, however, as the objection was ultimately withdrawn.

B. Admissibility of Lay Opinion

[2] In his second argument, defendant contends the trial court committed plain error in admitting the lay opinion testimony of Officer Stewart that defendant was the person depicted in the videotape. Defendant did not object until plaintiff's questioning on redirect. Defendant argues Officer Stewart was in no better position than the jury to identify defendant in the videotape, therefore Officer Stewart's testimony was inadmissible lay opinion. We disagree.

In general, we apply the abuse of discretion standard to reviews of the admissibility of lay opinion testimony. *See State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000). However, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1) (2009); *see State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991). "It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." N.C.R.

App. P. 10(a)(1). Therefore, where a party does not object at trial, plain error is the proper standard of review. *State v. Odom*, 307 N.C. 655, 656, 300 S.E.2d 375, 376 (1983). Plain error is "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987). Plain error exists "only in exceptional cases where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Hammett*, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006) (internal quotation marks and citations omitted).

Defendant argues Officer Stewart's identification of defendant and his interpretation of defendant's comments in the videotape constituted inadmissible lay opinion testimony. In supporting his argument defendant cites to *State v. Belk*, 201 N.C. App. 412, 689 S.E.2d 439 (2009), *disc. review denied*, 364 N.C. 129, 695 S.E.2d 761 (2010), where the defendant received a new trial because a police officer's inadmissible narration of the content of a videotape and testimony identifying the defendant in the tape were the only evidence that the defendant was in the video besides the jury's own viewing of the tape. Our Court held the trial court erred in allowing the officer's testimony because the officer "was in no better position than the jury to identify Defendant as the person in the surveillance video." *Id.* at 414, 689 S.E.2d at 441.

"[A]dmissible lay opinion testimony 'is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.' " *Id.* (quoting N.C. Gen. Stat. § 8C-1, Rule 701 (2007)). "Ordinarily, opinion evidence of a non-expert witness is inadmissible because it tends to invade the province of the jury." *State v. Fulton*, 299 N.C. 491, 494, 263 S.E.2d 608, 610 (1980). In *Fulton*, the officer testified regarding the design of shoe tracks from a crime scene, which should be left for the jury or an expert in latent evidence identification. *Id.* Nonetheless,

> "[t]he current national trend is to allow lay opinion testimony identifying the person, usually a criminal defendant, in a photograph or videotape where such testimony is based on the perceptions and knowledge of the witness, the testimony would be helpful to the jury in the jury's fact-finding function rather than

invasive of that function, and the helpfulness outweighs the possible prejudice to the defendant from admission of the testimony."

*Belk*, 201 N.C. App. at 415, 689 S.E.2d at 441 (quoting *State v. Buie*, 194 N.C. App. 725, 730, 671 S.E.2d 351, 354 (2009)). In analyzing the admissibility of lay opinion testimony identifying a defendant as the person in a videotape, courts in the majority trend weigh the following factors:

"(1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph; (3) whether the defendant had disguised his appearance at the time of the offense; and (4) whether the defendant had altered his appearance prior to trial."

*Id.* (quoting *United States v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005)); *see, e.g., United States v. Henderson*, 68 F.3d 323 (9th Cir. 1995) (allowing admission of testimony where witness knew defendant for 15 years and had seen him often throughout the period); *United States v. Jackson*, 688 F.2d 1121 (7th Cir. 1982) (allowing testimony where witness met defendant only once, but the amount of time witness spent with defendant goes to weight rather than admissibility). We find these federal court cases persuasive as Rule 701 of the Federal Rules of Evidence is indistinguishable from that of Rule 701 of the North Carolina Rules of Evidence. *See* Fed. R. Evid. 701 (2009); *Belk*, 201 N.C. App. at 415-16, 689 S.E.2d at 441-42. These federal courts have also "considered the clarity of the surveillance image and completeness with which the subject is depicted in their analysis." *Belk*, 201 N.C. App. at 416, 689 S.E.2d at 442; *see Dixon*, 413 F.3d at 545.

We find defendant's reliance on *Belk* distinguishable from the case at hand. In *Belk*, the officer had minimal contacts with the defendant, consisting of three brief encounters, with the most recent encounter prior to trial being when the officer merely passed the defendant in her patrol car. *Belk*, 201 N.C. App. at 418, 689 S.E.2d at 443. Alternatively, in the case at hand, Officer Stewart had the following exchange with the prosecutor:

[Ms. Huskins]: Did you know the defendant before April 8, 2008?

[Officer Stewart]: I had had dealings with him.

[Ms. Huskins]: Hum?

[Officer Stewart]: I had dealt with him before, yes, ma'am.

[Ms. Huskins]: Okay. So in your dealings with him before would you have been able to recognize him if you saw him again?

[Officer Stewart]: Yes, ma'am.

[Ms. Huskins]: When you looked at the video on April 8, 2008, did you recognize anyone that you saw on that video?

[Officer Stewart]: Yes, ma'am.

[Ms. Huskins]: And who did you recognize?

[Officer Stewart]: Mr. Collins.

Here, Officer Stewart had "dealings" with defendant which leads us to believe that Officer Stewart was familiar with defendant and would be in a better position than the jury to identify defendant in the videotape. We believe "dealings" mean more than minimal contacts, as were present in *Belk*; however, we do note defense counsel could have questioned these "dealings," if so desired.

In weighing the factors taken from *Belk*, Officer Stewart had a sufficient level of familiarity with defendant's appearance to aid the jury in its determination. *See id.* at 415, 689 S.E.2d at 441. While there is no evidence defendant wore a disguise or altered his appearance in the videotape, we still find Officer Stewart's testimony to be helpful to the jury and not prejudicial to defendant. Although the clarity of the videotape did not directly come into question, Officer Stewart did testify in regard to the blacked out portion of the tape, which he believed was caused by Mr. Snyder's seatbelt or clothing. Also, in support of its case, the State presented and defense stipulated to the 110 grams of marijuana obtained through the controlled buy. Therefore, in reviewing the evidence as a whole, we find Officer Stewart's testimony did not prejudice defendant and in actuality was helpful to the jury due to Officer Stewart's "dealings" with defendant. Consequently, defendant's argument does not meet the standard of plain error.

### III. Conclusion

We find no error on behalf of the trial court. The trial court did not commit reversible error by admitting the videotape as substantive evidence, nor did it commit plain error by admitting the lay opinion testimony of Officer Stewart.

No error.

Judges HUNTER (Robert C.) and STEELMAN concur.