HUNTER, JR., ROBERT N., Judge.
A jury convicted Garrett Fox ("Defendant") of two counts of trafficking by selling four grams or more but less than fourteen grams of opium or heroin. Defendant appeals a final judgment sentencing him to two consecutive terms of seventy to ninety-seven months imprisonment. Defendant contends the court committed plain error in admitting lay opinion testimony from a detective concerning the credibility of his informant and instructing the jury to decide a question the State conceded at trial. We hold the court did not plainly err.
I. Facts and Procedural History
The Haywood County grand jury indicted Defendant for two counts of trafficking in opium or heroin by selling four grams or more but less than fourteen grams. The offenses occurred on 22 May 2013 and 20 June 2013. Both the State and Defendant consented to joinder of the offenses.
During the pre-trial conference, Defendant informed the court he planned to admit essential elements of the offenses. He admitted he possessed, sold, and transported four or more but less than fourteen grams of opium or heroin on two separate occasions. Defendant's counsel notified the court he wished to raise the defense of entrapment as to both counts of trafficking by sale.
The case came for trial on 23 March 2015. The State presented four witnesses: Mark Mease, Mitch McAbee, Holly Newsome, and Jennifer Robertson. The evidence presented at trial relevant to the appeal tended to show the following. Sergeant Mark Mease, a detective with the Haywood County Sheriff's Office, testified Danny Price, a confidential informant, told him 100 dosage units of oxycodone could be purchased illegally for $1000. Mease agreed if the potential target was willing to sell directly to an undercover officer, then he would complete the transaction. According to Mease, in an undercover operation, because informants tend to be unreliable buyers, police prefer to set up a transaction where an undercover officer is the buyer.
In both transactions, Detective McAbee purchased the pills directly from the Defendant. On 22 May 2013, McAbee drove an undercover vehicle to a predetermined location, met with Defendant, and completed the transaction. Mease's informant then contacted him about the possibility of a second transaction involving Defendant. At the same price, Mease agreed. Mease conducted surveillance during the transaction, which took place at a local Ingles food store. He witnessed Defendant and his girlfriend, Candy Brady, walk up to the undercover vehicle and complete the transaction with Detective McAbee.
On cross-examination, the following exchange occurred:
Q: Okay. In your experience working with Mr. Danny Price in 2013 with respect to the cases against Mr. Fox, did he prove to you to be reliable or unreliable?
A: He proved to be reliable in those cases.
The defense did not object to this testimony.
Detective McAbee, a detective with the Haywood County Sheriff's Office, testified on 22 May 2013, he met Defendant undercover at the informant's residence and purchased pills. Upon entering the residence, he saw Defendant and his girlfriend seated in the living room with a bag of pills on the coffee table. He paid Defendant $1000 and took the pills from the table. They had a brief discussion about setting up a future transaction.
On 20 June 2013, he met Defendant again, this time outside Ingles grocery store in a pickup truck. Defendant and Price arrived soon after Detective McAbee, and they both got in McAbee's truck. Detective McAbee gave Defendant $1000 for 100 oxycodone pills. After a brief discussion regarding the possibility of future transactions, the parties parted ways. The State rested.
Defendant moved to dismiss all charges. The court denied Defendant's motion.
Defendant testified on his own behalf. Defendant testified Price tried to convince him to sell his prescription pills in April 2013. Defendant stayed at the home of his friends, Nate and Rhonda, and Price showed up with the intention of selling Nate and Rhonda his prescription pills. When he discovered they were not at home, he offered to sell Defendant the pills. Defendant refused, saying that he had his own prescription. Price then asked him if he would be willing to sell some of his prescription, and he refused. Price called him several times over the next few weeks trying to convince him to sell his prescription. He denied Price's requests at first, but eventually gave in when Price said he would "get [him] in a place" if he sold his prescription. The cost of moving into a new place and turning the electricity on would be around $1400, and his desire to move his family motivated him to set up the transactions. He agreed to sell 100 of his oxycodone pills for $1000, and he received another $400 from Price in exchange for a promise to sell 100 more from his next prescription. He gave Price ten extra pills during this first transaction as a thank you for helping him afford a place to live. At the next transaction on 20 June, he sold McAbee ninety pills for $900 dollars.
The defense called Irene Griffin, a registered pharmacist, to the stand. Griffin verified Defendant had a lawful prescription for oxycodone with acetaminophen, ten milligrams/325 milligrams, which he filled on 11 January 2013. The prescription contained 180 pills. Griffin also verified Defendant filled a prescription for 180 oxycodone pills on 21 May 2013. The defense rested.
In rebuttal, the State called Danny Price, the informant, to testify. Price claimed Defendant approached him, asking if Price knew where he could sell his pills. Price did not testify about a date or timeline of when Defendant approached him. Price never offered to sell any pills during his April 2013 visit to Nate and Rhonda's house, but offered to ask around to see if he could accommodate Defendant's request to sell his pills. Defendant called Price multiple times after their April meeting to see if he found a buyer. After the first sale in May 2013, Defendant began calling him again to see if they could set up a second sale after he was able to refill his prescription.
Price then explained a judge accepted his plea agreement 28 January 2014, prior to his testimony in this trial. The State read his plea agreement into the record:
"The defendant shall plead guilty by way of bill of information to two counts of maintaining a dwelling place or vehicle for controlled substances. Pursuant to plea, the State shall dismiss the remaining charges delineated hereinafter in this transcript." Price testified he did not testify in this case pursuant to any deal.
At the close of all the evidence, Defendant again moved for dismissal of all charges. Defendant also requested the court dismiss the charges of trafficking by sale and hold he was entrapped as a matter of law. The State conceded the third element of entrapment, that Price acted as an agent of the State in his interactions with Defendant, but argued the presence of the first element is a question for the jury. The State also requested entrapment be denied as a matter of law because Defendant cannot satisfy the second element, that Defendant was subject to persuasion or trickery. The State addressed Defendant's first argument of lawful possession by stating that the evidence does not definitively prove that the pills sold to McAbee were the same pills Defendant was prescribed, and that this was a factual question for a jury to decide. The court denied Defendant's motion to dismiss the two charges of trafficking by sale.
The court instructed the jury on the elements of trafficking by sale as well as entrapment. In part, the court instructed the jury as follows: "Entrapment occurs when a person acting on behalf of a governmental agency induces the defendant to commit a crime not contemplated by the defendant for the purpose of instituting a criminal charge against him. Entrapment is a complete defense to the crime charged." The jury found Defendant guilty of both counts of trafficking in opium by sale of more than four grams but less than 14 grams. Defendant did not object to the jury instructions.
For the first count, the court sentenced Defendant to no less than seventy months imprisonment, and no more than ninety-six months, with credit given for his ten days of pretrial confinement. The court also ordered Defendant to pay a fine of $50,000, restitution to the State Bureau of Investigation in the sum of $1,000, and $5,160 to reimburse the State for the cost of his court-appointed counsel. For the second count, the court sentenced Defendant to no less than seventy months imprisonment and no more than ninety-six months. The court also ordered Defendant to pay a fine of $50,000, and $1,000 for restitution. The court ordered Defendant serve the two sentences consecutively. Defendant filed a timely Notice of Appeal to this Court on 31 March 2016.
II. Jurisdiction
Jurisdiction lies with this Court pursuant to N.C. Gen.Stat. §§ 7A-27(b) and 15A-1444(a).
III. Standard of Review
"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N .C.R.App. P. 10(a)(4). The North Carolina Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." State v. Gregory, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996), cert. denied, 525 U.S. 952, 142 L.Ed.2d 315 (1999) ). To reach plain error, the error in the trial court's jury instructions or error in the admissibility of evidence must be so prejudicial to have had a probable impact on the jury's finding the defendant guilty. State v. Lawrence 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). Plain error may also exist when the error is "so fundamental as to amount to a miscarriage of justice." Id. (quoting State v. Bagley, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), cert. denied, 485 U.S. 1036, 99 L.Ed.2d 912 (1988) ).
IV. Analysis
A. Lay Opinion Testimony
Defendant asserts the superior court committed plain error by violating N.C. Gen. Stat § 8C-1, Rule 701, which sets limitations on lay opinion testimony. Defendant contends the admission of Detective Mease's statement claiming Price "proved to be reliable" with respect to the cases against Defendant in 2013 was prejudicial and led the jury to accept Price's version of the conversations with the Defendant. We are not persuaded.
If a witness is not testifying as an expert, his testimony is limited "to those opinions and inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact on an issue." N.C. Gen.Stat. § 8C-1, Rule 701 (2015). Generally, lay opinion testimony is not permitted because it invades the province of the jury. State v. Collins, 216 N.C.App. 249, 255, 716 S.E.2d 255, 260 (2011). However, a police officer's lay opinion testimony may be admissible "based upon his personal observations at the scene and his investigative training background as a police officer." State v. Howard, 215 N.C.App. 318, 325, 715 S.E.3d 573, 578 (2011) (internal quotations and citation omitted). An officer may present opinion testimony helpful to understanding the investigative process. See State v. Houser, --- N.C.App. ----, ----, 768 S.E.2d 626, 631-632 (2015), disc. review denied, 368 N .C. 281, 775 S.E.2d 869 (2015).
At the time he made the statement in question, Detective Mease was on the witness stand during a redirect examination by the State. The State asked Mease if in his "experience in working with Mr. Danny Price in 2013 with respect to the cases against Mr. Fox, did he prove to you to be reliable or unreliable?" Mease answered: "He proved to be reliable in those cases." This statement addresses Price's conduct during specific, observable instances in 2013 where he proved himself reliable by reporting information to Mease which Mease later determined to be accurate. Mease's statement regarding Price's reliability in these instances was rationally based on his perception of Price and helpful to a clear understanding of his testimony. His statement was helpful to the jury in understanding involving an informant in the investigative process. Therefore, admission of this portion of his testimony does not constitute error, much less plain error.
B. Jury Instructions
Appellant also asserts the court committed plain error by instructing the jury to decide an issue the State had already conceded. The court instructed the jury to consider whether Price acted on behalf of a governmental agency when he set up the sale of pills. The State conceded Price acted on behalf of a government agency. We do not agree this instruction rose to plain error.
The burden of proving the affirmative defense of entrapment to the satisfaction of the jury lies with the defendant. State v. Hageman, 307 N.C. 1, 28, 296 S.E.2d 433, 448 (1982). Entrapment occurs where "(1) law enforcement officers or their agents engaged in acts of persuasion, trickery or fraud to induce the defendant to commit a crime, and (2) the criminal design originated in the minds of those officials, rather than with the defendant." State v. Branham, 153 N.C. App 91, 100, 569 S.E.2d 24, 29 (2002).
The trial court's charge to the jury in part directed the jury to determine if Price "acted on behalf of a governmental agency ... [t]he Unified Narcotics Investigative Team, the Maggie Valley Police Department, the Haywood County Sheriff's Department, and the Canton Police Department are governmental agencies." Price was a confidential informant, and Detective Mease was his "handler". Detective McAbee explained that "handler" referred to an officer with whom a confidential informant normally has contact. Mease testified earlier that he was a part of a drug enforcement task force which included representatives from the Maggie Valley Police Department, Waynesville Police Department, Canton Police Department, and the Haywood County Sheriff's Office. Price worked directly with Mease to set up both transactions involving Defendant. There is overwhelming evidence indicating Price acted on behalf of these agencies. The State conceded Price was "acting on behalf of law enforcement officers, a government agency." The error in asking the jury to redundantly address this question was not so fundamental to amount to a miscarriage of justice, and therefore does not rise to plain error.
V. Conclusion
For the foregoing reasons, we hold the trial committed no error in part and no plain error in part.
NO ERROR IN PART; NO PLAIN ERROR IN PART.
Chief Judge McGEE and Judge DILLON concur.
Report per Rule 30(e).