IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-237

No. COA20-452

Filed 1 June 2021

Franklin County, No. 16CRS051676

STATE OF NORTH CAROLINA

v.

SHAWN MARTEZ MCKOY

Appeal by Defendant from judgment and order entered 22 May 2019 by Judge Cy A. Grant, Sr., in Franklin County Superior Court. Heard in the Court of Appeals 14 April 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Carole Biggers and Assistant Attorney General Eric R. Hunt, for the State-Appellee.*

*The Green Firm, PLLC, by Bonnie Keith Green, for Defendant-Appellant.*

COLLINS, Judge.

Defendant, Shawn Martez McKoy, appeals a judgment entered upon his conviction of felony larceny and an order for restitution. Defendant argues that the trial court: (1) plainly erred by permitting the State's four witnesses to offer lay opinions identifying an individual depicted in surveillance footage as Defendant; (2) erred by denying Defendant's motion to dismiss for insufficient evidence; and, (3) erred by failing to consider Defendant's ability to pay before ordering restitution.

The trial court did not err in admitting one witness' identification of Defendant and did not plainly err in admitting identifications by the other witnesses. Because there was substantial evidence of each element of felony larceny and Defendant's identity as the perpetrator, the trial court did not err in denying Defendant's motion to dismiss. The trial court did not fail to consider Defendant's ability to pay prior to ordering restitution, and therefore did not abuse its discretion.

## I.    Procedural History

On 20 February 2017, Defendant was indicted on two counts of felony larceny. Defendant was tried before a jury in Franklin County Superior Court on 21 and 22 May 2019. At the close of the State's evidence, Defendant moved to dismiss both charges for insufficient evidence. The trial court denied Defendant's motion. Defendant did not present any evidence and renewed his motion to dismiss, which the trial court again denied. The jury returned a verdict of guilty on the first count of felony larceny and not guilty on the second count. The trial court sentenced Defendant to 11 to 23 months in prison and ordered Defendant to pay $3,200 in restitution. Defendant gave timely notice of appeal in open court.

## II.    Factual Background

In August 2016, William Mitchell owned and operated a catering company in Louisburg, North Carolina, adjacent to a Sheetz gas station. Mitchell owned a trailer containing various catering equipment used for his business and stored the trailer on

the business's property adjacent to the Sheetz. Mitchell testified that he purchased the trailer near the end of 2014 for "[s]omewhere in the vicinity of $3500."

¶ 4 Mitchell last saw the trailer around 1 August 2016. In the last week of August 2016, he drove past the property and saw that the trailer was gone. He contacted the Louisburg Police Department and Detective Clifford Stephens met with Mitchell at the property.

¶ 5 Stephens examined the lot where the trailer was kept and found no physical evidence other than tire drag marks over a curb. He then requested that Cindy Jackson, a manager at the Sheetz, permit him to access the surveillance footage recorded by the store's multiple cameras. Jackson allowed Stephens to review the footage, and Mitchell joined him. Stephens determined that the trailer was removed on the night of 25 August 2016 and asked Jackson to provide him with recordings taken from multiple cameras during a specific 15-minute time frame ("Sheetz Footage"). Jackson requested the Sheetz Footage from the Sheetz security office, which delivered a DVD containing it to Jackson. Jackson then provided the DVD to Stephens.

¶ 6 Both Mitchell and Stephens took still images of an individual depicted in the Sheetz Footage to show to their contacts. Stephens sent an image to Troy Wheeless, an agent with the North Carolina Department of Motor Vehicles license and theft bureau. Wheeless identified Defendant as the individual in the image. Mitchell also

compared a picture of Defendant from a DMV website or other government database

with the still that he took from the Sheetz Footage and concluded that Defendant was

the individual in the Sheetz Footage.

¶ 7        Mitchell, Jackson, Stephens, and Wheeless each testified for the State at trial.

During direct examination of Stephens, the State played multiple portions of the

Sheetz Footage for the jury.  Mitchell described the Sheetz Footage as showing, at

approximately 9:00 p.m. on 25 August:  (1) an extended-cab silver truck pulling in to

the Sheetz parking lot and parking in front of the store; (2) an individual getting out

of the driver's side of the truck and "hesitat[ing] as he appears to look over at the

trailer"; (3) that individual, a "black male, average height, average weight, beard,

mustache, close cut hair, a red shirt and khaki pants[,]" walking into the entryway of

the Sheetz; (4) the individual walking through a hallway to the store's bathroom;

(5) the individual returning to the truck, starting it, and beginning to drive off; (6) the

truck leaving the Sheetz parking lot, and exiting the view of the cameras, in the

direction of the property where the trailer was stored; and, (7) the truck later

returning to the view of the cameras and pulling out with the trailer in tow.  The

video did not show anyone else getting into or out of the truck while it was on the

Sheetz property.

¶ 8        At trial, Mitchell, Jackson, Stephens, and Wheeless each identified the

individual depicted in the Sheetz Footage as Defendant.  Defendant raised only a

general objection to the identification by Jackson and did not object to the identifications by the other three witnesses.

¶ 9        The jury found Defendant guilty of larceny of the trailer, but not guilty of larceny of the catering equipment within the trailer. The trial court entered judgment and ordered restitution. Defendant appeals.

### III.    Discussion

**A.  Lay Witness Identifications**

¶ 10        Defendant argues that the trial court erred by permitting the State's witnesses to give lay opinion testimony identifying Defendant as the individual pictured in the Sheetz Footage.

¶ 11        Defendant acknowledges that he raised only a general objection to the identification by Jackson and did not object to the identifications by Mitchell, Stephens, and Wheeless. As Defendant concedes, the issue of whether the identifications were properly admitted is not preserved for appellate review. *See* N.C. R. App. P. 10(a)(1) ("[I]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."); *State v. Jones*, 342 N.C. 523, 535, 467 S.E.2d 12, 20 (1996) ("A general objection, when overruled, is ordinarily not adequate unless the evidence, considered as a whole, makes it clear that there is no purpose to

be served from admitting the evidence.").

¶ 12     Notwithstanding Defendant's failure to properly preserve this issue, because Defendant specifically and distinctly contends that the admission of the identifications amounted to plain error, we will review the trial court's admission of the identifications for plain error. *See* N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

¶ 13     "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). The plain error rule "is always to be applied cautiously and only in the exceptional case . . . ." *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (citation omitted).

¶ 14     "Under the North Carolina Rules of Evidence, the jury is charged with determining what inferences and conclusions are warranted by the evidence." *State v. Buie*, 194 N.C. App. 725, 730, 671 S.E.2d 351, 354 (2009) (citation omitted).

"Ordinarily, opinion evidence of a non-expert witness is inadmissible because it tends to invade the province of the jury." *State v. Fulton*, 299 N.C. 491, 494, 263 S.E.2d 608, 610 (1980). A lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2019).

¶ 15        A lay witness may not give an opinion as to the identity of an individual depicted in surveillance images where the witness is "in no better position than the jury to identify [the defendant] as the person in the surveillance [images] . . . ." *State v. Belk*, 201 N.C. App. 412, 414, 689 S.E.2d 439, 441 (2009). In determining whether a lay witness is sufficiently qualified to give an opinion on the identity of a person depicted in surveillance images, we consider (1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's specific familiarity with the defendant's appearance at the time the surveillance was taken, or at a time when the defendant was dressed in a similar manner to the individual in the surveillance; (3) whether the defendant had disguised his appearance at the time of the offense; (4) whether the defendant had altered his appearance before trial; and (5) the clarity of the surveillance images and the completeness with which the individual was depicted. *State v. Hill*, 247 N.C. App. 342, 346, 785 S.E.2d 178, 181-82 (2016); *State v. Collins,* 216 N.C. App. 249, 256, 716 S.E.2d 255, 260 (2011).

¶ 16    At trial, only Wheeless indicated that he had a general familiarity with Defendant. Wheeless testified that he was "familiar with" Defendant, had "previous dealings" with Defendant, and had "been in his personal presence[,]" even though "[p]robably weeks" had passed between the last time Wheeless saw Defendant and the day he identified Defendant in the still image provided by Stephens. Mitchell, Jackson, and Stephens each had no familiarity with Defendant's appearance prior to seeing him in the Sheetz Footage. Mitchell testified that he did not know Defendant, nor did he have any contact with Defendant after the trailer was taken. Stephens testified that he had not seen Defendant in person prior to trial. Jackson offered no testimony indicating that she was familiar with Defendant.

¶ 17    None of the State's witnesses testified to their specific familiarity with Defendant's appearance at the time the trailer was taken, or with his appearance when dressed in a manner similar to the individual depicted in the Sheetz Footage. No evidence was presented that the individual in the Sheetz Footage had used a disguise, or that Defendant had altered his appearance between 25 August 2016 and trial. Finally, there is no indication of any defect in the clarity of the Sheetz Footage, and there are multiple instances in which the footage shows the individual in his entirety as he walks through the view of the store's cameras.

¶ 18    The admissibility of Wheeless's testimony is controlled by this Court's decision in *State v. Collins*. In that case, the defendant argued that the trial court plainly

erred by admitting an officer's lay opinion identifying the defendant as the person depicted in a surveillance video. *Collins*, 216 N.C. App. at 254, 716 S.E.2d at 259. The officer testified only that he "had had dealings" with the defendant. *Id.* at 256, 716 S.E.2d at 261. This Court stated that "[w]e believe 'dealings' mean more than minimal contacts . . . however, we do note defense counsel could have questioned these 'dealings,' if so desired." *Id.* at 257, 716 S.E.2d at 261. Based on the officer's testimony concerning "dealings" with the defendant, this Court concluded that the officer "was familiar with defendant and would be in a better position than the jury to identify defendant in the videotape." *Id.*

¶ 19 Similarly, Wheeless testified that he had "previous dealings" with Defendant. Wheeless also testified that he was "familiar with" Defendant and had "been in his personal presence[.]" Defendant did not question the basis of Wheeless's claimed familiarity or the scope of these "dealings" on cross examination. Accordingly, Wheeless was qualified to give lay opinion testimony identifying the individual in the Sheetz Footage as Defendant. The admission of Wheeless's testimony was not error, let alone plain error.

¶ 20 No evidence, however, supported a conclusion that Mitchell, Jackson, or Stephens were qualified to provide lay opinion testimony identifying Defendant as the individual in the Sheetz Footage. The trial court erred by admitting their identifications of Defendant.

¶ 21        Defendant contends that but for these erroneous identifications, "there was no evidence that [Defendant] committed the crime or was at the Sheetz store, and the jury likely would not have convicted him." We disagree.

¶ 22        Defendant emphasizes that the trial court "instructed the jury that the video and screen shots were admitted only for the purpose of illustrating and explaining the witnesses' testimony." The DVD containing the Sheetz Footage was admitted "generally into evidence" by the trial court. The trial court instructed the jury, however, that "[p]hotographs and a video were introduced into evidence in this case for the purpose [of] illustrating and explaining the testimony of a witness. These photographs and video may not be considered by you for any other purpose." Nonetheless, as discussed above, Wheeless's identification of Defendant was based on his prior familiarity with Defendant and was properly admitted. The jury was permitted to consider the Sheetz Footage as illustrative of Wheeless's identification and assess the accuracy of Wheeless's identification.

¶ 23        Additionally, the State introduced several still images for the jury's consideration. Among these were State's Exhibit 5, "a picture of a gentlemen [sic] at the men's and women's restroom," and State's Exhibit 7, a known photograph of Defendant in 2014 taken from a DMV or other government database. During examination of both Stephens and Wheeless, State's Exhibit 5 and State's Exhibit 7 were published to the jury simultaneously. The jurors therefore had an opportunity

to compare the images and draw their own conclusion as to whether Defendant was the individual in the Sheetz.

¶ 24    Because the admission of Wheeless's identification was not erroneous, the Sheetz Footage illustrated Wheeless's identification and permitted the jury to assess its accuracy, and the jury had the opportunity to draw its own conclusions based on still images admitted into evidence, we cannot conclude that the erroneous admission of identifications by Mitchell, Stephens, and Jackson "had a probable impact on the jury's finding that the [D]efendant was guilty." *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378.    Consequently, Defendant cannot demonstrate prejudice, and the erroneous admission of these identifications did not amount to plain error.

**B. Sufficiency of the Evidence**

¶ 25    Defendant next argues that the trial court erred by denying his motion to dismiss because the evidence was insufficient to support his conviction for felony larceny.    We review a trial court's denial of a motion to dismiss de novo.    *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).    In ruling on a motion to dismiss, "the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015) (internal quotation marks and citation omitted).

> In deciding whether substantial evidence exists[, t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*State v. Hill*, 365 N.C. 273, 275, 715 S.E.2d 841, 843 (2011) (quoting *State v. Powell,* 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

Defendant was convicted of felony larceny of the trailer under N.C. Gen. Stat. § 14-72(a). "The essential elements of larceny are that the defendant '(1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently.'" *State v. Campbell*, 373 N.C. 216, 221, 835 S.E.2d 844, 848 (2019) (quoting *State v. Reid*, 334 N.C. 551, 558, 434 S.E.2d 193, 198 (1993)). "Larceny of goods of the value of more than one thousand dollars ($1,000) is a Class H felony." N.C. Gen. Stat. § 14-72(a) (2016).

Defendant argues that the evidence admitted at trial "established only that [Defendant] was in the Sheetz store" and that "[t]here was insufficient evidence to support an inference that the individual depicted in the Sheetz surveillance video is the person who stole the trailer." We disagree.

During the State's case in chief, the trial court admitted the Sheetz Footage

into evidence, and the State played multiple clips of the footage.[1]  Mitchell and Stephens extensively narrated the contents of these clips without objection.  As discussed above, each of the State's witnesses identified Defendant as the individual in the Sheetz Footage.  Though three of these identifications were erroneously admitted, they are still relevant in assessing a motion to dismiss.  *See Hill*, 365 N.C. at 275, 715 S.E.2d at 843, (requiring the court, for purposes of a motion to dismiss for insufficient evidence, to consider "all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State").  Additionally, the trial court admitted State's Exhibit 5, a still image taken from the Sheetz Footage showing the suspect outside of the Sheetz bathroom, and State's Exhibit 7, a known image of Defendant.

¶ 29        The evidence admitted at trial, viewed in the light most favorable to the State, and giving the State the benefit of every reasonable inference, tended to show: Mitchell purchased his catering trailer for approximately $3,500 in 2014.  Mitchell parked the trailer on a lot next to a Sheetz gas station in Louisburg, North Carolina.  Mitchell last saw the trailer around 1 August 2016.  On the night of 25 August 2016, an extended-cab silver truck pulled up to the front of the Sheetz.  Defendant exited

---

[1] The trial court was consequently permitted to consider the Sheetz Footage in ruling on Defendant's motion to dismiss, despite the subsequent inconsistent instruction that the jury was to consider the Sheetz Footage only for illustrative purposes.

the truck, walked into the Sheetz, and went into the bathroom. After a few minutes, Defendant returned to the truck. Defendant drove the truck towards the exit of the Sheetz parking lot, braked, and backed up to the adjacent property where Mitchell's trailer was parked. A few minutes later, Defendant drove the truck away with the trailer in tow.

¶ 30        Defendant argues that the evidence cannot support his felony larceny conviction because it shows only that Defendant had the opportunity to take the trailer. It is true "that a conviction cannot be sustained if '[t]he most the State has shown is that defendant had been in an area where he could have committed the crimes charged.'" *Campbell*, 373 N.C. at 221, 835 S.E.2d at 848 (quoting *State v. Minor*, 290 N.C. 68, 75, 224 S.E.2d 180, 185 (1976)). But crediting the in-court identifications and giving the State the benefit of every reasonable inference, a rational juror could conclude that Defendant was the sole occupant and driver of the truck and, without Mitchell's consent, hitched Mitchell's trailer—valued at over $1,000—to the truck and drove away with the trailer in tow, intending to deprive Mitchell of it permanently. Accordingly, substantial evidence of each element of felony larceny and Defendant's identity as the perpetrator was presented. The trial court did not err by denying Defendant's motion to dismiss.

## C. Restitution Order

¶ 31        Defendant argues that the trial court erred in ordering restitution because it

failed to consider Defendant's ability to pay. Though Defendant did not object to the award of restitution before the trial court, "a defendant's failure to specifically object to the trial court's entry of an award of restitution does not preclude appellate review." *State v. Mauer*, 202 N.C. App. 546, 551, 688 S.E.2d 774, 777-78 (2010) (citations omitted); *see also* N.C. Gen. Stat. § 15A-1446(d)(18) (2019).

¶ 32          "When sentencing a defendant convicted of a criminal offense, the court shall determine whether the defendant shall be ordered to make restitution to any victim of the offense in question." N.C. Gen. Stat. § 15A-1340.34(a) (2019).

> In determining the amount of restitution to be made, the court shall take into consideration the resources of the defendant including all real and personal property owned by the defendant and the income derived from the property, the defendant's ability to earn, the defendant's obligation to support dependents, and any other matters that pertain to the defendant's ability to make restitution, but the court is not required to make findings of fact or conclusions of law on these matters.

N.C. Gen. Stat. § 15A-1340.36(a) (2019).

¶ 33          "A trial court's judgment ordering restitution must be supported by evidence adduced at trial or at sentencing." *State v. Mumford*, 364 N.C. 394, 403, 699 S.E.2d 911, 917 (2010) (quotation marks and citation omitted). "[T]he award does not have to be supported by specific findings of fact or conclusions of law, and the quantum of evidence needed to support the award is not high. Rather, when there is some evidence that the amount awarded is appropriate, it will not be overruled on appeal."

*State v. Hillard*, 258 N.C. App. 94, 97, 811 S.E.2d 702, 704 (2018) (citations omitted). "Whether the trial court properly considered a defendant's ability to pay when awarding restitution is reviewed by this Court for abuse of discretion." *Id.* at 98, 811 S.E.2d at 705.

¶ 34    During trial, Mitchell testified that he had paid "[s]omewhere in the vicinity of $3500" for the trailer. The trial court was also informed, prior to ordering restitution, that Defendant was near the end of an active sentence and therefore unable to currently earn, Defendant has two children to support upon his release, and Defendant "plan[s] to go back to school and get a trade once he leaves from custody." Defendant also filed an affidavit of indigency reflecting that he was in custody and had zero assets and zero liabilities as of 22 May 2019.

¶ 35    Given the information presented to the trial court, the amount of restitution ordered, and the terms of its payment, the trial court did not fail to consider Defendant's financial resources as required by section 15A-1340.36(a) and thus, did not abuse its discretion. *See State v. Tate*, 187 N.C. App. 593, 597-98, 653 S.E.2d 892, 896 (2007) (finding sufficient consideration of defendant's financial resources where the trial court was presented with an affidavit of indigency and "was aware of defendant's age, employment situation, and living arrangements"); *State v. Person*, 187 N.C. App. 512, 531, 653 S.E.2d 560, 572 (2007) (The "relatively modest amount of restitution and the terms of its payment are not such as to lead to a 'common sense'

conclusion that the trial court did not consider defendant's ability to pay."), *rev'd on other grounds*, 362 N.C. 340, 663 S.E.2d 311 (2008).

## IV.    Conclusion

¶ 36    Because Wheeless had general familiarity with Defendant, the trial court did not err in permitting him to identify Defendant as the individual depicted in the Sheetz Footage.  Though the trial court erred in permitting the State's other three witnesses to identify Defendant, in light of the other evidence presented, the trial court did not plainly err.  The trial court did not err in denying Defendant's motion to dismiss, and did not abuse its discretion in ordering Defendant to pay restitution.

NO ERROR IN PART; NO PLAIN ERROR IN PART.

Judges TYSON and CARPENTER concur.