STATE OF NORTH CAROLINA v. JERRY LENELL BELK

No. COA09-187

(Filed 8 December 2009)

**1. Evidence— lay opinion testimony**

Because the testifying police officer was in no better position than the jury to identify defendant as the person depicted in the surveillance video, the trial court erred by admitting the officer's lay opinion testimony.

**2. Evidence— lay opinion testimony**

There was no rational basis for the trial court to conclude that the police officer was more likely than the jury correctly to identify defendant as the individual depicted in the surveillance video where the officer's familiarity with defendant's appearance was based solely on three brief encounters with defendant and there was no evidence that defendant had altered his appearance prior to trial, that the individual depicted in the surveillance video had disguised his appearance at the time of the offense, that the individual's face or other features were obscured in the video or blocked by any item of clothing, or that the surveillance video viewed by the jury was unclear or blurred.

STATE v. BELK

[201 N.C. App. 412 (2009)]

**3. Evidence— prejudicial error**

As the jury was likely to give significant weight to the officer's testimony and the State's case rested exclusively on the surveillance video and the officer's identification of defendant in the video, the trial court committed prejudicial error by allowing into evidence the officer's identification testimony.

Appeal by defendant from judgment entered 10 September 2008 by Judge Robert C. Ervin in Superior Court, Mecklenburg County. Heard in the Court of Appeals 1 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General, Judith Tillman, for the State.*

*Jarvis John Edgerton, IV for defendant-appellant.*

WYNN, Judge.

Defendant Jerry Lenell Belk appeals his convictions for felony breaking and entering, felony larceny after breaking and entering, and obtaining habitual felon status. He argues that the trial court erred by allowing a police officer to testify that Defendant was the individual depicted in a surveillance video tape. After careful review, we hold that the trial court committed prejudicial error by admitting the testimony of Officer Ring, identifying the Defendant as the person depicted in the video surveillance tape, and remand for a new trial.

At trial, the State presented evidence tending to show the following: On 7 October 2007, Officer Aaron Appleman, a police officer with the Charlotte-Mecklenburg Police Department, responded to an alarm call at 500 West Fifth Street in Charlotte, N.C. at approximately 2:42 p.m. At the scene, the lobby door was open but intact. However, the glass door to the interior office suite occupied by Elder Design Limited (doing business as ESD Architecture[1]) "had been smashed into pieces." The rear office door and side window to the back office were also damaged. Elliott Elder, the chief executive officer of ESD Architecture, later reported that a laptop computer worth approximately $2800 had been stolen.

On the day of the break-in, ESD Architecture was equipped with a video security system provided to the company by "a licensed bank

---

1. In their briefs, both parties refer to the business as "E.D.S. Architecture." At trial, however, Mr. Elder, the CEO, called the business "ESD Architecture," and explained that ESD is a doing-business-as name. Both the arrest warrant and the indictments call the business "ESD Architecture."

security system vendor." The security company downloaded the video surveillance footage from 7 October 2007 onto a compact disk, which Danielle Matuszczk[2], an operations manager at ESD Architecture, gave to Charlotte-Mecklenburg Police Officer Christopher Eubanks on 23 October 2007. During the course of the investigation, Charlotte-Mecklenburg Police Officer Donna Ring viewed the video surveillance footage and identified Defendant as the individual in the video.

Defendant was indicted for felony breaking and entering and felony larceny after breaking and entering on 10 December 2007, and for attaining habitual felon status on 11 August 2008. After a trial in Superior Court, Mecklenburg County, a jury issued guilty verdicts on all three counts. The trial court entered judgment and commitment on 10 September 2008, sentencing Defendant to a term of 133 to 169 months imprisonment with fifty-three days credit for confinement prior to judgment, and recommended a civil lien against Defendant for attorney's fees ($2460).

On appeal, Defendant argues that the trial court erred by allowing Officer Ring's lay opinion testimony identifying Defendant as the person depicted in the video surveillance footage.

**[1]** Because Officer Ring was in no better position than the jury to identify Defendant as the person in the surveillance video, we hold that the trial court erred by admitting the officer's testimony. Further, finding the error to be prejudicial, we remand for a new trial.

Pursuant to the N.C. Rules of Evidence, admissible lay opinion testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2007). Although N.C. appellate courts have not addressed the specific issue of lay opinion testimony identifying a defendant as the person depicted in a surveillance video, "[o]rdinarily, opinion evidence of a non-expert witness is inadmissible because it tends to invade the province of the jury." *State v. Fulton*, 299 N.C. 491, 494, 263 S.E.2d 608, 610 (1980).

In *State v. Fulton*, our Supreme Court found an officer's testimony that the design of the shoe tracks in a photograph of the crime

---

2. This witness's name is spelled inconsistently in the transcript. It appears as both Matusczck and Matuszczk. The parties in their briefs use the latter, though it would appear from the transcript that the former may be correct, since it was apparently spelled out by the witness herself.

scene was the same pattern as the tread on the defendant's shoe to be inadmissible lay opinion testimony. The Court reasoned "the jury was apparently as well qualified as the witness to draw the inferences and conclusions from the facts that [the officer] expressed in his opinion." *Id.* (citations omitted); *see also State v. White*, 154 N.C. App. 598, 605, 572 S.E.2d 825, 831 (2002) (holding inadmissible an officer's testimony that a recovered television was "more than probably" the victim's where testimony was not based on his perception); *State v. Shaw*, 106 N.C. App. 433, 417 S.E.2d 262 (holding opinion testimony not based on personal knowledge and not helpful to the jury was inadmissible because the jury was as qualified as the officer to infer from the facts that the defendant had broken into the victim's home), *disc. review denied*, 333 N.C. 170, 424 S.E.2d 914 (1992).

Because Rule 701 of the Federal Rules Evidence is identical to Rule 701 of the North Carolina Rules of Evidence, the federal jurisdictions' treatment of this issue is persuasive. *See* Fed. R. Evid. 701 (2007). As this Court noted in *State v. Buie*:

> The current national trend is to allow lay opinion testimony identifying the person, usually a criminal defendant, in a photograph or videotape where such testimony is based on the perceptions and knowledge of the witness, the testimony would be helpful to the jury in the jury's fact-finding function rather than invasive of that function, and the helpfulness outweighs the possible prejudice to the defendant from admission of the testimony.

—— N.C. App. ——, ——, 671 S.E.2d 351, 354-55 (internal quotation marks and citation omitted) (holding the trial court erred in admitting detective's testimony interpreting surveillance videotapes, where the tapes were played for the jury), *disc. review denied*, 363 N.C. 375, 679 S.E.2d 135 (2009). Specifically, courts adopting the majority trend have found the following factors to be relevant to this analysis:

> (1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph; (3) whether the defendant had disguised his appearance at the time of the offense; and (4) whether the defendant had altered his appearance prior to trial.

*United States v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005) (citing *United States v. Pierce*, 136 F.3d 770, 774-75 (11th Cir. 1998)); *see, e.g., United States v. Henderson*, 68 F.3d 323 (9th Cir. 1995) (uphold-

ing the admission of testimony where witness had known defendant for fifteen years and seen him frequently throughout that period); *United States v. Jackson*, 688 F.2d 1121 (7th Cir. 1982) (upholding the admission of testimony where witness had met the defendant only once, concluding the amount of time witness spent with the defendant goes to the weight rather than the admissibility of the evidence), *cert. denied*, 460 U.S. 1043, 75 L. Ed. 2d 797 (1983); *United States v. Borrelli*, 621 F.2d 1092 (10th Cir. 1980) (defendant's stepfather was in a better position than the jury to compare defendant's in-court appearance with that of the individual in the surveillance photograph where defendant had altered his appearance by changing his hairstyle and growing a mustache), *cert. denied*, 449 U.S. 956, 66 L. Ed. 2d 222 (1980); *United States v. Saniti*, 604 F.2d 603, 604-05 (9th Cir. 1979) (upholding the admission of testimony of defendant's roommates who identified the specific clothing worn by the individual in the surveillance photograph as belonging to the defendant).

These courts have also considered the clarity of the surveillance image and completeness with which the subject is depicted in their analysis. As the Sixth Circuit explained:

Lay opinion identification testimony is more likely to be admissible . . . where the surveillance photograph is of poor or grainy quality, or where it shows only a partial view of the subject. *See, e.g., United States v. Jackman*, 48 F.3d 1, 4-5 (1st Cir.1995) (upholding the admission of lay opinion identification testimony primarily because "[a]ll the surveillance photographs of the . . . robber are somewhat blurred, and they show only part of the robber's face, primarily the left side from eye-level down"); *United States v. Allen*, 787 F.2d 933, 936 (4th Cir.1986) (upholding the admission of lay opinion identification testimony where one surveillance photograph showed one individual "with his jacket hood pulled over his head so that his hair, forehead and right eye are not visible," and two other photographs were "incomplete reproductions of the man in the bank," one showing "a profile of a man wearing a hardhat, rubbing his forehead, with his mouth open," and the other showing "little more than a blurred profile, with most of the left half of the individual's face hidden"), *vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 132 (1987).

*Dixon*, 413 F.3d at 545; *see also Nooner v. State*, 907 S.W.2d 677, 687 (Ark. 1995) (upholding the admission of testimony where surveillance images were "somewhat blurred and indistinct[,]" the witnesses

had special familiarity with the defendant, associated him with the clothing seen in the footage, and defendant had altered his appearance at trial), *cert. denied*, 517 U.S. 1143, 134 L. Ed. 2d 558 (1996); *People v. Mixon*, 180 Cal. Rptr. 772, 779 (Cal App. 1982) (upholding the admission of officer's testimony who had seen the defendant in a "variety of contexts both indoors and outdoors" where the surveillance photograph was taken at a downward angle, in poor lighting, and the subject was partially obscured).

We review a trial court's ruling on the admissibility of lay opinion testimony for abuse of discretion. *See State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001). Thus, in this case, we must uphold the admission of Officer Ring's lay opinion testimony if there was a rational basis for concluding that she was more likely than the jury correctly to identify Defendant as the individual in the surveillance footage. *See Robinson v. People*, 927 P.2d 381, 382 (Colo. 1996) (upholding testimony by a police officer that identified the individual depicted in the surveillance videotape as the defendant on review for abuse of discretion).

[2] Here, there was no evidence presented by either party tending to show that the individual depicted in the surveillance footage had disguised his appearance at the time of the offense or that Defendant had altered his appearance prior to trial. Further, there was no testimony indicating that the individual's face or other features were obscured in the footage or blocked by any item of clothing. Indeed, at the trial, Officer Ring recounted seeing Defendant on a few occasions, all of which involved minimal contact. Based on this limited contact with Defendant and his "very distinctive profile," Officer Ring concluded that the person depicted in the surveillance video was the Defendant.

Additionally, Officer Ring and Detective Caldwell testified to the clarity of the surveillance footage as viewed by the officers, stating that the resolution was clear or "great" when viewed on the desktop computer in the police station but "very fuzzy" when shown on the large projection screen to the jury. While viewing the footage on a laptop at trial, Officer Ring commented, "This shows more of what I was looking at. You can tell that the picture is a lot clearer than what y'all [the jury] saw on the display."

However, as the trial transcript reveals, the jurors had the opportunity to view the video footage on a personal computer. During

Officer Ring's testimony and at the State's request, the trial court instructed the officer on a number of occasions to turn the laptop computer toward the jury "so the jurors can see it," and to "show the people on the other end that can't see."

Although in Officer Ring's brief contacts with Defendant she may have become familiar with Defendant's "distinctive" profile, we hold that there was no basis for the trial court to conclude that the officer was more likely than the jury correctly to identify Defendant as the individual in the surveillance footage. Here, there is no evidence that Defendant altered his appearance between the time of the incident and the trial, that the individual depicted in the footage was wearing a disguise, or that there were any issues regarding the clarity of the surveillance footage not ameliorated by allowing the jurors to view the footage on the laptop. The only factor supporting the trial court's conclusion is Officer Ring's familiarity with Defendant's appearance, based on three brief encounters, the most recent being when she passed by Defendant in her patrol car. Accordingly, we hold that the trial court erred by allowing Officer Ring to testify that, in her opinion, the individual depicted in the surveillance video was Defendant.

**[3]** Having found that the trial court committed error by allowing the testimony of Officer Ring, we turn now to the question of whether such error was prejudicial, warranting a new trial. Under N.C. Gen. Stat. § 15A-1443(a) (2007):

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

Here, the record reflects that the State's case rested exclusively on the surveillance video and Officer Ring's identification testimony. The State offered no fingerprint evidence, DNA evidence, or other identification testimony. Further, because the witness was a police officer with eighteen years of experience, the jury likely gave significant weight to Officer Ring's testimony. Officer Ring's testimony identifying the individual depicted in the surveillance video as the Defendant played a significant if not vital role in the State's case, making it reasonably possible that, had her testimony been excluded, a different result would have been reached at trial. *See State v. Hernendez*, 184 N.C. App. 344, 646 S.E.2d 579 (2007) (holding exclusion of admis-

sible character evidence regarding complaining witness was prejudicial where the State's case rested almost exclusively on complaining witness's testimony, there was little or no physical or medical evidence at issue, and credibility of complaining witness was of significant probative value). Accordingly, we reverse and remand for a new trial.

New Trial.

Judges CALABRIA and ELMORE concur.