McGEE, Chief Judge.
John Allen Hill, IV ("Defendant") appeals from judgments entered after a jury found him guilty of selling and delivering cocaine, possession of drug paraphernalia, conspiring to sell cocaine, and conspiring to deliver cocaine. We find no error in Defendant's trial or sentence.
I. Background
Lieutenant Randolph King ("Lieutenant King") and Sergeant Chris Mantooth ("Sergeant Mantooth") (collectively, "the officers"), of the Pender County Sheriff's Office, were assigned to work in the narcotics unit on 1 June 2012. The officers were working with a confidential informant, Terrell Shiver ("Shiver"), on a "drug buy" sting operation involving a crack cocaine dealer known as "Squirmy." Under the direction of the officers, Shiver called Squirmy, later identified as Dawaan Walker ("Walker"), and agreed to meet him in the parking lot of a local school to buy 3.5 grams of crack cocaine from him for $200.00
When Shiver arrived, Walker informed Shiver that he did not have the crack cocaine, but a man known as "Willie" would be along shortly to complete the drug transaction. When Willie arrived, he spoke with Shiver, briefly showed Shiver the cocaine, and left to weigh the drugs. Willie then returned, and the transaction occurred. Shiver testified that he had "not [previously] bought drugs from [Willie], per se," but "knew of him" from parties he had attended in the past. At trial, Shiver identified "Willie" as Defendant. The transaction was surreptitiously recorded on video by Shiver, and was played for the jury at trial.
Defendant was convicted of selling cocaine, delivering cocaine, possession of drug paraphernalia, conspiring to sell cocaine, and conspiring to deliver cocaine. Defendant appeals.
II. Analysis
Defendant contends the trial court erred by: (1) permitting Lieutenant King to testify that the crack cocaine salesman depicted on the video was Defendant; (2) entering judgments against Defendant for the sale of cocaine and conspiracy to sell cocaine because the indictments charging those offenses were fatally defective, thereby divesting the trial court of jurisdiction; and (3) improperly instructing the jury on the sale of cocaine and the accompanying conspiracy charge, thereby allowing the jury to convict Defendant on a theory not contained in the indictments.
A. Lieutenant King's Testimony
Defendant first contends the trial court erred in permitting Lieutenant King to give lay opinion testimony regarding the identity of the cocaine salesman in the video recorded by Shiver. Defendant's argument rests on two exchanges that occurred at trial. The first exchange occurred during Shiver's testimony, shortly after the video of the drug transaction was admitted as evidence and played for the jury. After the video was played, the following colloquy occurred between the trial court and Defendant's counsel regarding the admissibility of future testimony by Lieutenant King related to the video:
[Defendant's Counsel]: ... [T]he video itself is the best evidence, which is the objection I probably will have about the testimony from [Shiver] about what is on the video, because the video itself has been admitted as substantive evidence. And any interpretation of the video is invading the province of the jury. The jury can consider it for whatever it's worth.
And the same thing if Lieutenant King takes the stand and tries to interpret the point in time that he took these photos or whatever he took off the video-
THE COURT: Well, Shiver and [Lieutenant] King are two different arguments. ... With regards to [Lieutenant] King, I would agree with you. ... See, the witness who is there is testifying from his recollection and time, what was recorded to what his recollection is.
[Defendant's Counsel]: Right.
THE COURT: And [Lieutenant] King, however, is looking at the same thing the jury is looking at.
[Defendant's Counsel]: Right.
THE COURT: And you know, if [Lieutenant] King can say that's the defendant, well, ... twelve jurors can say that, or they can conclude that's not him.
[Defendant's Counsel]: Right.
THE COURT: It doesn't matter what [Lieutenant] King thinks. We're just in the same position that [Lieutenant] King is. We're looking at the same video and we've reached a different conclusion.
The second exchange Defendant relies on occurred during the testimony of Lieutenant King:
[Prosecutor]: At some point in your investigation-you did a follow-up investigation in determining who was who; is that correct?
[Lieutenant King]: I did.
[Prosecutor]: At some point in your investigation were you able to determine who Willie was?
[Defendant's Counsel]: Objection.
THE COURT: Approach the bench, please.
(A bench conference was held off the record.)
THE COURT: Overruled.
[Prosecutor]: Were you able to determine who Willie was?
[Lieutenant King]: I was.
[Prosecutor]: Who were you able to say Willie was?
[Lieutenant King]: John Allen Hill IV.
[Prosecutor]: Okay. No further questions, your Honor.
Defendant contends that the first exchange between his counsel and the trial court during Shiver's testimony was a correct statement of the law regarding lay opinion testimony. Defendant further contends that the trial court allowed Lieutenant King to give improper lay opinion testimony that identified Defendant as the person depicted in the video. Although no reason for Defendant's objection appears in the transcript, the record on appeal contains the following stipulation:
Concerning the transcript, ... the parties agree to the following: At lines 20-21 on pg. 155 of Volume 1 of the trial transcript, defense counsel cited State v. Belk, 201 N.C. App. 412, 689 S.E.2d 439 (2009) and argued that the prosecutor's question called for improper lay opinion testimony on the identity of the person depicted in the video footage.
Therefore, Defendant properly preserved this argument for our review.
Considering the prosecutor's questions and Lieutenant King's responses in context, we hold that no improper lay opinion testimony was proffered by Lieutenant King. While Lieutenant King did testify about the video and the video was played for the jury during Lieutenant King's testimony, his testimony regarding the video came before the exchange in question. Defendant's argument rests on the assertion that, during the exchange in question, Lieutenant King was permitted to testify that Defendant was the person depicted on the video. However, the question which elicited Defendant's objection did not mention or reference the video, or ask Lieutenant King to identify a person depicted in the video. The video was not mentioned in the entirety of the short redirect examination in which the relevant exchange occurred.
In the exchange in question, the prosecutor first asked whether Lieutenant King had performed a "follow-up investigation" to determine "who was who." Lieutenant King indicated he had done such an investigation. The prosecutor then asked whether "at some point in your investigation were you able to determine who Willie was," and Lieutenant King, over Defendant's objection, indicated that he had identified Defendant as Willie.
It is clear that the prosecutor was not asking Lieutenant King to identify Defendant as one of the people depicted in the video. The prosecutor only asked Lieutenant King whether his "follow-up investigation" led him to be able to identify Defendant as Willie. Lieutenant King did not give lay opinion testimony about the contents of the video, but only testified that his "follow-up investigation" revealed that Defendant was, in fact, "Willie." See State v. Felton , --- N.C. App. ----, 782 S.E.2d 122, 2016 N.C. App. LEXIS 111, at *15-16 (2016) (unpublished) (finding no error in the admission of alleged lay opinion testimony when "[t]here [was] no indication in the record that [the witness'] statement was solely based on his viewing of the surveillance tape," and that it was "certainly conceivable that [the witness] could have ways of knowing" the pertinent information besides through viewing the video). Defendant had the opportunity to ask Lieutenant King what steps he took in the course of his "follow-up investigation" that led him to be able to conclude that Defendant was Willie, but did not ask such questions.
We note that even if we were to hold that the prosecutor's question-"at some point in your investigation were you able to determine who Willie was"-elicited lay opinion testimony, and Lieutenant King improperly testified that Defendant was depicted in the video, Defendant would still be without relief due to his inability to show that the admission of the improper lay opinion testimony was prejudicial to him.
This Court has held that even if a trial court allowed improper lay opinion testimony, the defendant must show that such error was prejudicial before a new trial is warranted. See State v. Belk , 201 N.C. App. 412, 418, 689 S.E.2d 439, 443 (2009). Pursuant to N.C. Gen. Stat. § 15A-1443(a) :
A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.
N.C. Gen. Stat. § 15A-1443(a) (2015) ; see also Belk , 201 N.C. App. at 418, 689 S.E.2d at 443 (applying N.C.G.S. § 15A-1443(a) in a case involving whether the admission of improper lay opinion testimony was prejudicial).
In Belk , the trial court allowed a police officer to testify that the defendant was the individual depicted in a surveillance video. Belk , 201 N.C. App. at 413, 689 S.E.2d at 440. As this Court noted in its opinion, "the State's case rested exclusively on the surveillance video and [the police officer's improper] identification testimony." Id. at 418, 689 S.E.2d at 443. The State was able to offer
no fingerprint evidence, DNA evidence, or other identification testimony . Further, because the witness was a police officer with eighteen years of experience, the jury likely gave significant weight to [the police officer's] testimony. [The police officer's] testimony identifying the individual depicted in the surveillance video as the [d]efendant played a significant if not vital role in the State's case, making it reasonably possible that, had her testimony been excluded, a different result would have been reached at trial.
Id . at 418-19, 6890 S.E.2d at 443 (citation omitted) (emphases added).
In the present case, and unlike in Belk , the State's case did not rest exclusively on the video and Lieutenant King's alleged improper testimony. The State also proffered the identification testimony of the confidential informant, Shiver, who testified extensively about the drug buy. Shiver testified that at the drug buy "a guy that goes by the name of Willie pulled up" and, after discussing the weight and price of the crack cocaine to be bought, "said he would go and weigh it and be right back." In his testimony, Shiver stated he "knew of" Willie, was able to unequivocally identify Defendant as Willie, and did so before the video was introduced into evidence. Due to Shiver's positive identification testimony of Willie as Defendant, Lieutenant King's testimony, even if improper lay opinion testimony, played a much less significant role in the State's case than the improper lay opinion testimony in Belk . Further, it is unlikely that the jury would have placed greater weight on Lieutenant King's testimony than on the identification made by Shiver, a witness who provided the only firsthand account of the drug transaction at issue. Therefore, we cannot say that it is reasonably possible that, had Lieutenant King's allegedly improper testimony been excluded, a different result would have been reached at trial. See also State v. Buie , 194 N.C. App. 725, 733-34, 671 S.E.2d 351, 356-57 (2009) (finding no prejudicial error in the admission of improper lay opinion testimony where "the jury heard other testimony" which was "independent from" the improper lay opinion testimony").
B. Fatal Indictments
Defendant argues the indictments charging him with selling cocaine and conspiracy to sell cocaine were fatally defective because they did not name, or correctly name, the person to whom the State believed the drugs were sold. This defect, Defendant argues, divested the trial court of jurisdiction to enter judgment on those offenses. An indictment "is a written accusation by a grand jury, filed with a superior court, charging a person with the commission of one or more criminal offenses." N.C. Gen. Stat. § 15A-641(a) (2016). "North Carolina law has long provided that there can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. In the absence of an accusation the court acquires no jurisdiction whatsoever, and if it assumes jurisdiction a trial and conviction are a nullity." State v. Partridge , 157 N.C. App. 568, 570, 579 S.E.2d 398, 399 (2003) (citation, internal quotation marks and brackets omitted).
"An indictment is fatally defective if it wholly fails to charge some offense ... or fails to state some essential and necessary element of the offense of which the defendant is found guilty." Id. (citation and quotation marks omitted). We discuss the two indictments, 13 CRS 51597 and 13 CRS 51598, in turn.
1. Superseding Indictment in 13 CRS 51597
The superseding indictment in case 13 CRS 51597 charged Defendant with, inter alia , the sale of cocaine, a violation of N.C. Gen. Stat. § 90-95(a)(1) (2015). Count one of the indictment, the portion charging Defendant with the sale of cocaine, reads:
The jurors for the State upon their oath present that on or about the date(s) of offense shown and in the county named above ... [D]efendant named above unlawfully, willfully, and feloniously did sell to T. SHIVER a controlled substance, Cocaine, which is included in Schedule II of the North Carolina Controlled Substances Act.
The indictment alleged that the offense occurred on 1 June 2012 in Pender County. "The law is settled in this state that an indictment for the sale and/or delivery of a controlled substance must accurately name the person to whom the defendant allegedly sold or delivered, if that person is known." State v. Wall , 96 N.C. App. 45, 49, 384 S.E.2d 581, 583 (1989) (citations omitted). Defendant argues that the failure to include Shiver's full first name in the indictment rendered the indictment fatally defective. We disagree. The indictment identified "T. Shiver" as the person to whom Defendant sold cocaine, and the State presented evidence at trial that Defendant sold 3.5 grams of crack cocaine to a man named Terrell Shiver for $200.00. We hold that this evidence conformed to the allegations in the indictment, and that the superseding indictment in 13 CRS 51597 was not fatally defective. We note that this Court has come to the same conclusion in an unpublished opinion. See State v. Royster , 208 N.C. App. 284, 702 S.E.2d 556, 2010 N.C. App. LEXIS 2335, at *3-4 (2010) (unpublished) (holding that an indictment which identified the person to whom the defendant sold cocaine as "T. Ross" was not fatally defective when the evidence showed that the defendant sold cocaine to "Terry Ross").
This Court has held that the elements of an offense "need only be alleged" in an indictment "to the extent that the indictment (1) identifies the offense; (2) protects against double jeopardy; (3) enables the defendant to prepare for trial; and (4) supports a judgment on conviction." State v. Holliman , 155 N.C. App. 120, 126, 573 S.E.2d 682, 687 (2002) (citation omitted). In his brief to this Court, Defendant appears to argue that the indictment in 13 CRS 51597 failed to protect against concerns regarding double jeopardy because there was a chance of "the specter of another indictment from this same event." While Defendant has made this assertion, he has not provided a reason why this may be the case. The indictment alleged that Defendant sold cocaine to a "T. Shiver" in Pender County, North Carolina on 1 June 2012. We hold that the indictment adequately informed Defendant of the charges against him, allowed him to prepare for trial, and sufficiently identified the purchaser of his product to protect against any double jeopardy concerns.
2. Indictment in 13 CRS 51598
The indictment in case 13 CRS 51598 charged Defendant with, inter alia , conspiracy to sell cocaine, a violation of N.C. Gen. Stat. § 90-98 (2015). Count one of the indictment, the portion charging Defendant with conspiracy to sell cocaine, reads:
The jurors for the State upon their oath present that on or about the date(s) of the offense shown and in the county named above ... [D]efendant named above unlawfully, willfully, and feloniously did CONSPIRE WITH DAWAAN WALKER TO SELL COCAINE TO A RELIABLE CONFIDENTIAL INFORMANT, #12006.
Like the indictment in 13 CRS 51597, the indictment in 13 CRS 51598 also alleged that the offense occurred on 1 June 2012 in Pender County. Defendant argues the indictment was fatally defective because it failed to name the person to whom the cocaine was sold. This assertion, however, is contrary to settled precedent. This Court has held that "an indictment for conspiracy to sell or deliver a controlled substance need not name the person to whom the defendant conspired to sell or deliver." State v. Lorenzo , 147 N.C. App. 728, 734, 556 S.E.2d 625, 628 (2001) (citation omitted). "Therefore, the indictment was sufficient despite the fact that it does not identify the person to whom defendant conspired to sell or deliver" cocaine, and was not fatally defective. Id.
C. Jury Instructions
In Defendant's final argument, he contends the trial court erred in instructing the jury that the State was required to prove Defendant sold cocaine to "Terrell Shiver" when the indictment alleged Defendant sold cocaine to "T. Shiver." Defendant argues the evidence, and the instruction, did not conform to the indictment. However, as we have held, the evidence presented at trial conformed to the allegations in the indictment, and the indictment in 13 CRS 51597 was not fatally defective. Therefore, the trial court did not err in instructing the jury that the State was required to prove that Defendant sold cocaine to "Terrell Shiver."
NO ERROR.
Report per Rule 30(e).
Judges DAVIS and BERGER concur.