MURPHY, Judge.
This appeal stems from the conviction of Defendant, Dujuan Marquis Cole, on numerous charges arising from the armed robbery of Mr. Azadia Jeffries ("Jeffries"). The evidence presented at trial tends to show that Jeffries was in his apartment with his girlfriend, Shakimblee Brower ("Brower"), and their two children when a friend and neighbor, Joshua Thompson ("Thompson"), came by with two men whom Jeffries did not know. Thompson explained that the two men wanted to buy cigarillos, and Jeffries let the trio into his apartment.
At some point, the interaction turned violent when one of the men accompanying Thompson, later identified as Nathaniel Brown ("Brown"), brandished a handgun and aimed it at Jeffries's head. Seeing the gun, Thompson ran out of the apartment. Brown then pressed Jeffries against a wall and told him to "give it up." The second man, later identified as Defendant, took the firearm and continued to point it at Jeffries while Brown searched Jeffries's pockets. Brown and Jeffries began to fight, and Jeffries put Brown in a headlock before Defendant intervened and began hitting Jeffries with the gun and kicking him.
Around this time, Brower heard her children crying and went downstairs to find her house fully enveloped in chaos, with a glass coin jar shattered across the floor and Jeffries and Brown fighting. Brower retrieved her children and safely fled to a neighbor's apartment. Amidst his struggle with Brown, Jeffries was shot in the arm above the wrist. Jeffries eventually gained control of the firearm and shot Brown several times. Brown fell to the floor and Defendant fled the scene. Brown died as a result of the shooting.
Officers from the Greensboro Police Department reported to the scene a few minutes after the robbery and discovered Jeffries walking in the apartment's parking lot, holding his left arm and bleeding. Jeffries told police about the incident and provided a physical description of the man who had fled the apartment after Brown was shot. Jeffries was transported to the hospital, where he explained the incident to a second officer and once again provided a physical description of Brown's accomplice in the robbery.
Later that same evening, Detective Tony Hinson ("Hinson"), a homicide detective acting as the lead investigator in the case for the Greensboro Police Department, arrived at the apartment complex. Hinson received a description of the man who had fled the apartment and took steps to locate him. Hinson spoke with Brown's mother and, based on their conversation, identified Defendant as a suspect. Hinson reviewed surveillance tapes from the apartment complex and a composite forensic image based on a description of the assailant Jeffries provided to a Crime Scene Investigator. About a week after the incident, Hinson called Defendant to request his presence at a police station for an interview. The interview was recorded and subsequently entered into evidence during trial.
About three months later, a Guilford County Grand Jury indicted Defendant on four charges stemming from Jeffries's armed robbery. Following a trial in Guilford County Superior Court, a jury found Defendant guilty of robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and possession of a firearm by a felon. Additionally, Defendant pled guilty to attaining habitual felon status. Defendant was sentenced to three active sentences, each 96 to 128 months, to run consecutively less credit for 386 days served, and restitution in the amount of $ 3,949.83. Defendant gave notice of appeal in open court.
ANALYSIS
On appeal, Defendant advances three arguments: (1) the trial court committed plain error when it allowed parts of Hinson's testimony into evidence; (2) if not, Defendant received ineffective assistance of counsel; and (3) the trial court erred in entering a restitution order because it was not supported by competent evidence.
A. Plain Error
Defendant's first argument on appeal is that the trial court "committed plain error in permitting [Hinson] to provide testimony that was speculative and not based on personal knowledge." As an initial matter, Defendant notes trial counsel failed to object to any of the challenged testimony. Our review of this argument is therefore limited to plain error review.
"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice[,]" i.e. that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." Id. ; N.C.G.S. § 15A-1443(a) (2017). Plain error is to be "applied cautiously and only in the exceptional case," so an issue that rises to the level of plain error is often something that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).
Defendant alleges the trial court fundamentally erred by allowing inadmissible testimony from Hinson in at least two specific instances and because Hinson's testimony as a whole was "permeated with inadmissible statements, opinions, and speculation." Defendant fails to meet his burden of demonstrating plain error.
1. Hinson's Narration of the Surveillance Video
Defendant argues Hinson's narration of security camera footage "was inadmissible because he impermissibly opined that the ambiguous figure shown in surveillance footage was [Defendant]. His testimony was also inadmissible because he testified about numerous matters without personal knowledge, simply adopted or interpreted statements made by other witnesses while opining that [Defendant] was not credible." We have previously addressed the specific issue of whether police officers may testify as to their opinion of a surveillance video and held that they may not. State v. Belk , 201 N.C. App. 412, 418, 689 S.E.2d 439, 443 (2009) ("hold[ing] that the trial court erred by allowing [an officer] to testify that, in her opinion, the individual depicted in the surveillance video was [the d]efendant"); State v. Buie , 194 N.C. App. 725, 732-734, 671 S.E.2d 351, 355-57 (2009) (holding it was error to allow "narrative testimony about the depiction of two poor quality surveillance videos" that amounted to an officer's "opinion ... about the events depicted in the surveillance tapes"). While we reviewed the facts in Belk and Buie for abuse of discretion, the same principles apply here in the plain error context.
In Belk , the defendant was granted a new trial because the State's case rested "exclusively" on the officer's improper opinion testimony about the surveillance video. Belk , 201 N.C. App. at 418, 689 S.E.2d at 443. In Buie , we held a detective's narrative testimony interpreting surveillance video was improper under our Rules of Evidence, but was ultimately harmless error, as the other evidence against the defendant was strong. Buie , 194 N.C App. at 732, 671 S.E.2d at 355.
Here, unlike in Belk , the State's case against Defendant did not rest exclusively on the officer's opinion testimony. Instead, as in Buie , there is "sufficient evidence to support the jury's decision, independent from the [narration] testimony" of Hinson. Id. at 734, 671 S.E.2d at 353. At trial, both Jeffries and Brower identified Defendant as one of the men who robbed their apartment on the night in question. The jury also viewed the surveillance footage and was able to determine for itself whether Defendant was the individual shown walking near Jeffries's apartment before the robbery and running away shortly thereafter. See State v. White , 154 N.C. App. 598, 605, 572 S.E.2d 825, 831 (2002) (holding the trial court committed harmless error by allowing an officer's opinion testimony where there was substantial evidence linking the defendant to the crime and the jury could have concluded the defendant committed the crime without it). This is especially true given that the jury asked to review the surveillance tape during deliberations and was allowed to do so without objection by either party. Sufficient evidence existed aside from Hinson's testimony from which a reasonable juror could determine Defendant's guilt or innocence. The trial court did not commit plain error by allowing Hinson's narration of the surveillance tape.
2. Defendant's Videotaped Police Interview
Defendant next argues the trial court plainly erred by allowing an unredacted version of Hinson's interview of Defendant to play for the jury. During the interview, Hinson tells Defendant "excellent surveillance footage unambiguously shows" Defendant was involved in the crime. Defendant argues "[t]his out-of-court assertion was plainly inadmissible and compounded the error of permitting Det. Hinson to identify the figure [seen on the surveillance video] in court." We have denied such an argument previously, in State v. Miller , 197 N.C. App. 78, 676 S.E.2d 546 (2009).
In Miller , the defendant argued, in relevant part, "that the trial court committed reversible error by admitting into evidence [his] police interview without redacting those questions posed to him by [d]etectives ...." Id. at 85, 676 S.E.2d at 550-51. We disagreed and held the detectives' questions during the interrogation were "relevant to facts under dispute[,]" and "gave context to defendant's responses." Id. at 87, 676 S.E.2d at 552. Likewise, here, Hinson's questions during the interview contextualize Defendant's answers. Absent unusual circumstances, we do not require interview videos to be redacted such that the jury may only hear a defendant's answers. Id. ; see also State v. Clevinger , 249 N.C. App. 383, 390-91, 791 S.E.2d 248, 255 (2016). Allowing Defendant's interview with Hinson to play for the jury without redaction was not error.
3. Cumulative Error
Defendant also asserts a cumulative error argument, alleging the trial court erred by allowing Hinson's testimony because it was "permeated with inadmissible statements, opinions, and speculation." The majority of this section of Defendant's argument is either a rehashing of his first two arguments regarding Hinson's testimony or contentions that more appropriately go toward Defendant's argument that he was provided ineffective assistance of counsel ("IAC"). To the extent it adds new reasons why we should find plain error, Defendant's argument is unpersuasive.
"Cumulative errors lead to reversal when 'taken as a whole' they 'deprived the defendant of his due process right to a fair trial free from prejudicial error.' " State v. Wilkerson , 363 N.C. 382, 426, 683 S.E.2d 174, 201 (2008) (citing State v. Canady , 355 N.C. 242, 254, 559 S.E.2d 762, 768 (2002) ). Here, "Defendant has asserted a series of questionable instances of plain error, all of which we have found not to constitute plain error. Given the overwhelming evidence of Defendant's guilt in this case, the cumulative effect of any of the asserted errors does not come close to constituting plain error." State v. Howard , 215 N.C. App. 318, 329, 715 S.E.2d 573, 580 (2011). We find Defendant's third argument for plain error unconvincing and hold the trial court did not commit plain error.
B. Ineffective Assistance of Counsel
Defendant's second argument on appeal is that, should we find the trial court did not commit plain error, his trial counsel provided ineffective assistance such that Defendant is entitled to a new trial. We dismiss Defendant's IAC claim without prejudice so that he may raise it in the trial court through a Motion for Appropriate Relief ("MAR").
To prove IAC, a defendant must show (1) "counsel's representation fell below an objective standard of reasonableness[,]" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Allen , 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006). It is well established that arguments regarding IAC should generally be considered through an MAR rather than on direct appeal. State v. Stroud , 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001). "[W]hen it appears to the appellate court further development of the facts would be required before application of the Strickland test, the proper course is for the [c]ourt to dismiss the defendant's assignments of error without prejudice." Allen , 360 N.C. at 316, 626 S.E.2d at 286. We reach the merits of ineffective assistance of counsel claims on direct appeal only when it is apparent on the face of the record "that no further investigation is required ...." Id. ; State v. Thompson , 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004). Here, that is not the case.
Defendant argues his trial counsel was ineffective for numerous reasons, including his failure to lodge a single objection throughout Defendant's trial. In contrast, the State argues we should deny Defendant's IAC argument based on the cold record alone because he cannot show that "in the absence of counsel's alleged errors the result of the proceeding would have been different." Given the cold record before us, there is not sufficient evidence to decide these issues on direct appeal. Defendant's argument regarding IAC requires further investigation in order to be properly resolved. We dismiss Defendant's IAC argument without prejudice so that he may file an MAR regarding this issue in the trial court.
C. Restitution Order
Defendant's third argument on appeal is that the trial court's restitution order is not supported by competent evidence. "In the absence of an agreement or stipulation between [a] defendant and the State, evidence must be presented in support of an award of restitution." State v. Buchanan , 108 N.C. App. 338, 341, 423 S.E.2d 819, 821 (1992). Additionally, "it is elementary that a trial court's award of restitution must be supported by competent evidence in the record. However, this review is deferential to the trial court, as when there is some evidence as to the appropriate amount of restitution, the recommendation will not be overruled on appeal." State v. Mills , 221 N.C. App. 409, 415, 726 S.E.2d 926, 930 (2012) (citing State v. Hunt , 80 N.C. App. 190, 195, 341 S.E.2d 350, 354 (1986) ).
Here, the trial court ordered Defendant to pay restitution in the amount of $ 3,949.83, which, at trial, the State averred could be substantiated with receipts. This amount was based on the victim's medical bills from Moses Cone Health System and Southeast Orthopedic Hand Center. There was testimony that Jeffries's wallet and approximately $ 650 were taken during the robbery and that Jeffries had to pay for x-rays, orthodontics, and other medical bills. However, the Restitution Worksheet does not include receipts or testimony from the victim regarding his specific medical costs supporting the restitution order. We have held that "a restitution worksheet, unsupported by testimony or documentation, is insufficient to support an order of restitution." State v. Mauer , 202 N.C. App. 546, 552, 688 S.E.2d 774, 778 (2010). Therefore, we vacate the trial court's restitution order and remand for rehearing on this issue.
CONCLUSION
Defendant fails to prove any of the trial court's alleged errors rise to the level of plain error. Additionally, we dismiss his IAC claim without prejudice so that Defendant may raise his argument through an MAR. Finally, we vacate the trial court's restitution order and remand for rehearing on that issue.
NO PLAIN ERROR IN PART; NO ERROR IN PART; DISMISSED IN PART; VACATED AND REMANDED IN PART.
Report per Rule 30(e).
Judges HUNTER, JR. and DAVIS concur.