An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-623

Filed 1 April 2026

Wake County, Nos. 22CR207701-910, 22CR207702-910

STATE OF NORTH CAROLINA

       v.

DAVON KAREEN ALLEN


Appeal by defendant from judgment entered 4 June 2024 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 10 March 2026.

*Attorney General Jeff Jackson, by Associate Deputy Attorney General Daniel P. Mosteller, for the State.*

*Joseph P. Lattimore, for the defendant-appellant.*


TYSON, Judge.

Devon Allen ("Defendant") appeals from judgment entered 4 June 2024, upon a jury's conviction of guilty of first-degree murder and possession of a firearm by a felon. Our review discerns no error.

## I. Background

Defendant arrived at a Valero gas station in Raleigh at 4:08 a.m. on 10 May 2022, where a group of individuals had gathered. Surveillance cameras located at

the Valero and Zack's Grocery across the street recorded the events which transpired. Footage was also captured and obtained from traffic cameras maintained by the Raleigh Department of Transportation ("Raleigh DOT").

The cameras' recordings showed a man wearing torn light-colored jeans, black shoes, a black jacket, and a ski mask pulled over the top of his head. The man drove a red Nissan car with a distinctive black front bumper.

Defendant's cellphone records were introduced and tended to show he had traveled from Goldsboro to Raleigh on the afternoon of 9 May 2022 and was present in the immediate vicinity of the Valero gas station for several hours in the early morning of 10 May 2022.

The camera footage showed Davonte Martin drive into the Valero parking lot and a man, purported to be Defendant, pull his ski mask down to cover his face. Almost immediately, Mr. Martin drove back out of the Valero parking lot. The man followed Mr. Martin out of the parking lot in the red Nissan.

Approximately two minutes later, at 4:10 a.m., Mr. Martin's car re-entered the Valero parking lot. Defendant's cellphone records show he placed a call at 4:10 a.m. in the vicinity of the Valero. At 4:12 a.m., the red Nissan slowly passed the Valero and parked at the Snappy Lube building across the street. The man in the ski mask walked across the street from the Snappy Lube and stood behind a bus shelter.

At 4:15 p.m. the Valero surveillance camera captured an individual walking from the bus shelter and approach Mr. Martin's car as he was entering it. The video

footage was grainy, but the individual appeared to be wearing torn light-colored jeans, black shoes, and a black jacket. The Valero cashier working at the time confirmed the man was wearing a ski mask. Other physical features, such as hair, could not be seen due to the hood on his jacket.

The man shot Mr. Martin multiple times as he attempted to start his car. The shooter ran across the street to the Snappy Lube and left the parking lot in the red Nissan Sentra with the black front bumper. When Raleigh police officers arrived at the Valero, they found Mr. Martin inside of his car suffering with injuries from multiple gunshots. Mr. Martin died at the scene. An autopsy revealed Mr. Martin had been shot at least ten times.

Defendant engaged in a cell phone call from Goldsboro at 5:19 a.m., which was his first call after the 4:10 a.m. call from the vicinity of the Valero station. Testimony was presented to show it would generally take between forty-five and sixty minutes to drive from Raleigh to Goldsboro at that time of morning.

Later that day, detectives identified Defendant as a suspect and determined he was linked to several addresses, including one located in Goldsboro. Detectives went to the Goldsboro address and discovered a red Nissan Sentra automobile with a black front bumper. Defendant attempted to drive away in the car and was apprehended and arrested.

Search warrants executed for the Nissan Sentra and the Goldsboro apartment recovered neither a firearm nor clothing, which matched that worn by the shooter.

An attempt to match pieces of broken glass recovered from the Sentra to Mr. Martin's car was also unsuccessful.

No DNA evidence was presented to link Defendant to the crime. The police did not ask any witnesses to participate in photographic arrays or live lineup procedures, because they did not get a clear view of the shooter.

Detective Jared Silvious interviewed Defendant shortly after his arrest. Although the interview was "[v]ery, very brief[]," Detective Silvious was "able to put eyes on him."

At trial, surveillance videos from the Valero, Raleigh DOT, and Zack's Grocery were admitted into evidence and played for the jury. Trial testimony established it was "difficult to view and see things" from the Valero camera, which had captured the shooting, and the video footage was repeatedly referenced to as "grainy."

Detective Silvious and Detective Terry Jackson testified and described to the jury what they had observed in the admitted videos. Detective Jackson also testified he had reviewed approximately an hour and a half of video recordings from each location as part of his investigation. Both detectives explained they used granular details in the videos, such as the distinctive clothing worn by the shooter and the unique black front bumper of the red Nissan Sentra, to match Defendant across videos taken from the multiple security cameras.

Detective Johan Posthumus testified as an expert in cell site analysis and described the location of Defendant's cell phone by its "pinging" various cell towers

between the afternoon of 9 May 2022, and the morning of 10 May 2022. Evidence also included four pictures of Defendant from his public Facebook social media webpage on the day of the murder.

The trial court instructed the jury it could consider admitted photographs and videos "as evidence of the facts they illustrate or show." While deliberating, the jurors requested to see certain portions of various surveillance videos, which were replayed for them. The jury returned guilty verdicts on the first-degree murder charge, based on each of the three theories presented to it, and on the possession of a firearm by a felon charge. Defendant was sentenced to life in prison without possibility of parole for the first-degree murder conviction, and a minimum of nineteen and maximum of thirty-two months in prison for the possession of a firearm by a felon conviction, to run consecutively to the murder sentence. Defendant appeals.

## II.    Jurisdiction

This Court possesses jurisdiction for an appeal from a final judgment in a criminal case in Superior Court following a verdict of guilty pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2025).

## III.    Issues

Defendant argues the trial court committed plain error by permitting lay opinions from the detectives to determine the identity of the shooter in the video footage. Defendant also argues he was deprived of the effective assistance of counsel ("IAC") because his trial counsel failed to object to the improper lay opinions of the

detectives when offered.

## A. Standard of Review

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. 10(a)(1) (2025). In the criminal context, when a party does not object at trial, the proper standard of review for the unpreserved challenge is plain error. *State v. Odom*, 307 N.C. 655, 656, 300 S.E.2d 375, 376 (1983), *State v. Collins*, 216 N.C. App 249, 255, 716 S.E. 2d 255, 260 (2011).

To constitute plain error, Defendant must demonstrate a fundamental error occurred at trial. *State v. McKoy*, 277 N.C. App. 639, 643, 859 S.E.2d 635, 639 (2021) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice – that after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quoting *Odom*, 307 N.C. at 661, 300 S.E.2d at 378).

## B. Analysis

### 1. Lay Opinion Witnesses

Defendant first argues the trial court plainly erred by permitting Detectives Jackson and Silvious to provide lay opinion testimony, which interpreted the surveillance camera footage and purportedly identified Defendant across various video recordings. Defendant asserts this testimony improperly invaded the province

of the jury as the factfinder on the issue of the shooter's identity.

Rule 701 of the North Carolina Rules of Evidence provides lay opinion testimony is admissible if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2025). Although "[o]rdinarily, opinion evidence of a non-expert witness is inadmissible because it tends to invade the province of the jury," our Courts have held lay opinion testimony which tends to identify a person depicted in a video may be admissible to assist the jury. *State v. Fulton*, 299 N.C. 491, 494, 263 S.E.2d 608, 610 (1980).

Such testimony is admissible when the witness's familiarity with the defendant places the witness in a better position than the jury to make the identification. *See State v. Belk*, 201 N.C. App. 412, 414, 689 S.E.2d 439, 441 (2009). In evaluating whether such testimony is proper, courts must consider several factors including:

> (1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph; (3) whether the defendant had disguised his appearance at the time of the offense; and (4) whether the defendant had altered his appearance prior to trial.

*Id.* at 415, 689 S.E.2d at 441.

Courts must also consider the clarity of the surveillance footage. *McKoy*, 277

N.C. App at 644, 859 S.E.2d at 639 (citation omitted). When the images are unclear or "grainy," the testimony explaining or interpreting the footage may be more helpful to the jury. *Belk* at 416, 689 S.E.2d at 442 (citation omitted).

Here, the detectives described what they had observed in the multiple admitted surveillance videos and explained how they compared details across the different video feeds and recordings. Their testimonies referenced specific observable characteristics, such as the torn light-colored jeans, black shoes, black jacket, black ski mask, and the unique black front bumper on the red Nissan Sentra vehicle leaving the scene. Defendant failed to object to this testimony at trial. We review for plain error. *Odom*, 307 N.C. at 656, 300 S.E.2d at 276.

Presuming, *arguendo,* portions of the detectives' testimonies exceeded the permissible scope of lay opinion under Rule 701, particularly with respect to the detectives' lack of prior familiarity with Defendant, the record does not establish plain error. Even without the detectives' opinions, substantial evidence connected Defendant to the crime and enabled the jury to sufficiently identify him as the shooter.

First, the jury viewed the surveillance videos and still images and were able to independently evaluate the similarities in the perpetrator's clothing, body type, and vehicle depicted across the multiple surveillance camera recordings. The trial court instructed the jury it could consider the photographs and videos as evidence of the facts they illustrated, leaving the ultimate determination of identity and actions to

the jury.

Second, the cell site analysis and the cellphone records independently place Defendant in the immediate vicinity of the Valero before and during the shooting. Defendant's cellphone records showed his next call after the 4:10 a.m. call near the Valero, occurred at 5:19 a.m. from Goldsboro. Testimony tended to show the drive between Raleigh and Goldsboro at that time of the early morning typically took between forty-five and sixty minutes, which was consistent with the timing of the shooting and Defendant's subsequent location in Wayne County.

Third, the evidence tended to show Defendant was driving a red or burgundy Nissan Sentra with a distinctive black front bumper, the same unusual feature as was visible on the vehicle observed arriving at and leaving the scene. Officers later located that vehicle, which was registered to Defendant's mother, outside of Defendant's Goldsboro residence, and arrested Defendant as he attempted to drive away in it.

Even if portions of the detectives' testimonies explaining or describing the video footage should have been excluded, the remaining evidence presented at trial provided strong circumstantial evidence tending to show Defendant shot Mr. Martin. Defendant has failed to demonstrate under plain error review the challenged testimony, if erroneous, constituted "a miscarriage of justice probably result[ing] in . . . a different verdict . . . ." *Collins*, 216 N.C. App. at 255, 716 S.E.2d at 260.

**2. Ineffective Assistance of Counsel**

Defendant next argues he received IAC because his trial counsel failed to object to the detective's lay opinion testimony. To establish IAC, Defendant must satisfy the two-prong test established by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). He must show: (1) counsel's performance was deficient; and, (2) the deficient performance prejudiced the defense. *Id.* at 686, 80 L. Ed. 2d at 693. To demonstrate prejudice, Defendant must show a reasonable probability that, but for counsel's errors, the result of the trial would probably have been different. *Id.* at 694, 80 L. Ed. 2d at 698.

Presuming counsel should have objected to some portion of the detectives' testimonies, Defendant has not demonstrated prejudice to warrant a new trial. As discussed above, the State presented substantial independent evidence linking Defendant to the shooting. The jury personally viewed the surveillance footage and was able to assess it without relying solely on the detectives' testimonies. Additional circumstantial evidence, including Defendant's presence near the scene, the distinctive vehicle connected to him, and the precise cell phone location data and timing, strongly supported the State's case.

Because Defendant has not shown a reasonable probability that the outcome of the trial would have been different had counsel objected to the testimony, his IAC claim is without merit and overruled. *Id.*

## IV.  Conclusion

Defendant has failed to demonstrate plain error in the admission of the

detectives' lay opinion testimonies.  Because Defendant cannot establish prejudice, his claim of ineffective counsel also fails.

Defendant received a fair trial, free from prejudicial errors he preserved or argued.  We discern no error in the jury's convictions or in the judgments entered thereon.  *It is so ordered.*

NO ERROR

Judges CARPENTER and FLOOD concur.

Report per 30(e).